UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KARLA FALLON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1449-B |
| | § | |
| TRAILBLAZER HEALTH | § | |
| ENTERPRISES, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant TrailBlazer Health Enterprises LLC's Motion for Summary Judgment (doc. 35), filed on April 13, 2012. For the reasons set for below, the Court **GRANTS** Defendant's Motion.

### I.

### BACKGROUND

Plaintiff Karen Fallon ("Fallon")[1] was an employee of Defendant TrailBlazer Health Enterprises LLC ("TrailBlazer") from June 16, 2008 until her termination approximately fourteen months later on August 21, 2009. Doc. 2, Original Pet. at 3. Fallon served as an Auditor I on one of TrailBlazer's three Home Office Teams in its Audit and Reimbursement Division. *Id.* TrailBlazer works with the federal agency Centers for Medicare & Medicaid Services ("CMS") to process Medicare claims and ensure that Medicare providers are paid for their services. *Id.*; doc. 36, Br. at

---

[1]Plaintiff changed her name from Karen Johnson to Karen Fallon during the course of litigation. Doc. 25, Notice.

1

2. TrailBlazer's auditors apply accounting rules to ensure that payments made to providers are accurate. Doc. 38-12, App. at 870 (Long Decl.). The auditors first review the providers' costs reports and ensure that all required documentation is submitted and then prepare tentative settlements or rejection letters. *Id.* at 871-72; Doc. 41, Resp. at 6-7. Each Medicare file goes through several rounds of review, and the files constantly change hands between TrailBlazer employees, creating a sort of "assembly-line." Doc. 38-12, App. at 871-72; Doc. 41, Resp. at 7. The files and documents within are provided in hard copy only. Doc. 38-12, App. at 870-71; Doc. 41, Resp. at 7. Because some documents contain protected health information and personally identifiable information data of the patients receiving the Medicare services, TrailBlazer does not permit those documents to leave its office space. Doc. 38-12, App. at 873. In addition to reviewing documents and providing settlements, auditors must also communicate with providers who complain about the payment calculations in attempting to reach settlements. *Id.* at 870. TrailBlazer's contract with CMS subjects it to strict deadlines for completing these settlements. Consequently, TrailBlazer has established its own deadlines for ensuring that its work is completely in a timely manner and instituted mandatory office hours from 9am to 3pm, with a one-hour lunch break permitted between 11am and 1pm. *Id.* at 873.

       Fallon alleges in her Original Petition that she suffered from undiagnosed mild panic attacks in the past, but that her anxiety increased in the fall of 2008, several months after working for TrailBlazer. Doc. 2, Original Pet. at 3. Fallon states that, sometime between December 2008 and March 2009, she informed her supervisor at TrailBlazer, Christine Long ("Long"), that she suffered from Panic Disorder and Obsessive Compulsive Disorder. *Id.* At times, Fallon attributes her anxiety to incidents from her childhood, but at other times Fallon claims that her anxiety was caused by Long and her work at TrailBlazer. *See* doc. 41, Resp. at 10.

Fallon and the staff at TrailBlazer, including Long and Human Resources Manager Colette Walker ("Walker"), were in communication by email, telephone, and face-to-face meetings to address what sort of accommodations might assist Fallon so that she could attend work and complete her assignments. Doc. 38-12, App. at 876-79 (Long Decl.); Doc. 41, Resp. at 12. Fallon's mother and physician participated to varying degrees in offering suggestions. Doc. 42-6, Dr. Chavason Dep.; Doc. 42-7, Johnson Dep. These communications began in March 2009 and continued through August 2009. TrailBlazer informed Fallon several times that she should submit FMLA paperwork to protect any absences that she might accumulate due to her anxiety, but Fallon never completed the paperwork. Doc. 38-12, App. at 876-77 (Long Decl.); Doc. 42-3, App. at 39 (Fallon Dep.); Doc. 41, Resp. at 15.

Fallon's trail of unexcused absences began in mid-December of 2008. Fallon continued to arrive late to work or miss work altogether, both scheduled and unscheduled, most for leave without pay. Doc. 41, Resp. at 10. In 2009, it appears that Fallon was absent from work approximately part or all of: five days in January, five days in February; four days in March; fourteen days in April; three days in May; nine days in June; twenty days in July; and every day in August until her termination on August 21st. *See* Doc. 38, App. at 352-58 (Absence Summary Report), 927-958 (Employee Time Sheets), 970-1015 (Emails with Absence Reports). Fallon submitted doctor's notes for some of her absences. Doc. 38-14, App. at 980, 984-85, 988, 991. Fallon was warned that her unexcused absences and late arrivals would not be tolerated. Doc. 36, Br. at 8-16; Doc. 38-14, App. at 1000, 1003 (Corrective Action Reports).

During the significant periods of time in which Fallon did not go to the office and did not perform any work, Fallon did not complete her assignments by their deadlines. Doc. 38-14, App. at

1003 (Corrective Action Report). Due to Fallon's failure to complete her assignments by their deadlines and TrailBlazer's fear that it would not, in turn, meet the deadlines imposed by CMS under its contract, TrailBlazer was forced to reassign Fallon's work to other auditors on several occasions. *Id.* at 1003 (Corrective Action Report), 1004 (Email), 1030 (Email). Despite requests from Long to do so, Fallon refused to make up the time that she missed or work from home during non-office hours, such as weekends and evenings, to complete her assignments by their due date. *Id.* at 1031 (Email), 1046 (Email). Additionally, Long gave Fallon multiple extensions of time to complete her projects, but Fallon continued to miss those extended deadlines by refusing to work during office hours or outside of office hours. *Id.* at 1033, 1046.

Fallon was absent from work for part of each day in the first week of August and every day from August 7th through August 21st. She also refused to work from home, despite being granted unequivocal permission to do so on August 17, 2009. Consequently, TrailBlazer terminated Fallon on August 21, 2009.

Soon after her termination, Fallon contacted the Equal Employment Opportunity Commission ("EEOC"). On August 28, 2009, she completed an EEOC intake questionnaire. Doc. 38-6, App. at 424-27 (Intake Questionnaire). The intake form gave Fallon the option to file a charge against TrailBlazer at that time or decline to file a charge and instead simply request that an EEOC representative contact her to discuss her claim. *Id.* at 427. The form indicated that the failure to file a charge at that time might subject Fallon to waiver of the right to file a charge. *Id.* Fallon declined to file a charge and instead sought more information. *Id.*

Fallon emailed the EEOC on September 17, 2009 and November 3, 2009 asking about her claim. Doc. 38-16, App. at 1106, 1108-09. Fallon alleges that she made a phone call to the EEOC

4

sometime prior to December 1, 2009 to make a formal charge by phone. Doc. 42-8, App. at 250-51. The EEOC contains no documentation of that phone call. Doc. 38-16, App. at 1106 (Anderson Aff.). The following year, on November 4, 2010, Fallon filed a formal EEOC charge against TrailBlazer. Doc. 38-16, App. at 1104 (EEOC Charge). The charge was eventually dismissed without a determination on the merits. Doc. 38-16, App. at 1107 (Anderson Aff.).

Fallon filed an Original Petition in the Judicial District Court of Dallas County on June 20, 2011. Doc. 2., Original Pet. The petition alleges that TrailBlazer violated the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.051 and 21.128, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*, because TrailBlazer allegedly "failed or refused to make reasonable workplace accommodations to Plaintiff's known mental limitation." *Id.* at 6, 7. She seeks damages and attorney's fees and costs. *Id.* at 7. On June 30, 2011, TrailBlazer removed the case to this Court on the basis of original federal jurisdiction. Doc. 2, Notice. On April 13, 2012, TrailBlazer filed a Motion for Summary Judgment on both of Fallon's claims. Doc. 35. TrailBlazer raises an affirmative defense that Fallon failed to timely exhaust administrative remedies and seeks summary judgment on the merits. Doc. 36, Br. at 33-35. Fallon filed a Motion to Strike the affirmative defense (doc. 39), which this Court denied. Doc. 53.

The parties have submitted summary judgment evidence, including deposition testimony of Karla Fallon, Patricia Johnson, Christine Long, Melody Peters, Demetria Redmon, Colette Walker, and Dr. Edward Chavason; certified records from Fallon's previous employment; declarations of Fallon, Peters, Redmon, Long, and Walker; affidavits of Fallon and Alma Anderson; TrailBlazer employment documents, absence reports, and performance review forms; emails and letters; and EEOC documents.

Original federal jurisdiction exists pursuant to 28 U.S.C. § 1331.

## II.

## LEGAL STANDARDS

*A.     Summary Judgment Standard*

Summary judgment is appropriate when the pleadings and record evidence, taken as a whole, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075. "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (internal citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most

favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

## III.

## ANALYSIS

A.  *Timely Exhaustion of Administrative Remedies*

A threshold issue before the Court is whether Fallon's Original Petition is barred for failure to timely exhaust her administrative remedies. TrailBlazer argues that Fallon failed to file a timely EEOC charge as a precondition to her Original Petition, whereas Fallon claims that her EEOC charge was timely.

An employee raising a discrimination claim against her employer under the ADA or TCHRA must first exhaust her administrative remedies with the EEOC or Texas Human Rights Commission prior to filing a claim in court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). The parties agree that Fallon had a 300-day period from the date of her termination to file a charge against TrailBlazer with the EEOC in order to preserve her ADA claim. 42 U.S.C. § 2000e-5(e)(1); *Mohasco Corp. v. Silver*, 447 U.S. 807, 815-17 (1980); Doc. 36, Br. at 33; Doc. 41, Resp. at 20. Fallon had only 180 days within which to file a formal charge to preserve her TCHRA claim. *See* Tex. Lab. Code § 21.202.

TrailBlazer provides Fallon's EEOC charge as summary judgment evidence that Fallon did not file the EEOC charge against TrailBlazer until November 4, 2010, approximately 440 days after her termination and far outside of the 180-day and 300-day windows. Doc. 36, Br. at 34. The Charge

of Discrimination admits that Fallon was terminated on August 21, 2009 and alleges that she was denied reasonable accommodations for her disability in violation of the ADA. Doc. 38-16, App. at 1104 (EEOC Charge). Fallon signed the charge and dated it "11-4-10," and the EEOC stamp indicates a receipt date of "2010 Nov 24."[2] *Id.*

Fallon attempts to create a dispute of fact that she waited until November 4, 2010 to file her EEOC charge. Doc. 41, Resp. at 20. Fallon submits as summary judgment evidence her own affidavit stating that she filed a formal EEOC charge by telephone sometime after August 28, 2009 and "in no event after December 1, 2009." Doc. 42-8, App. at 250. Fallon thus argues that her filing was timely for both her ADA and TCHRA claims. Doc. 41, Resp. at 20. Nonetheless, Fallon admits that she did not sign a formal charge until November 4, 2010. *Id.*

TrailBlazer replies that Fallon's affidavit is not entitled to any weight because it is self-serving. Doc. 47, Reply at 17. TrailBlazer submits additional summary judgment evidence showing that the EEOC has no record of Fallon filing a formal charge until November 4, 2012. Doc. 36, Br. at 35; Doc. 47, Reply at 17-18. First, TrailBlazer provides an EEOC intake questionnaire, signed by Fallon on August 28, 2009. Doc. 38-6, App. at 424-27 (Intake Questionnaire). The intake form offered two options: file a charge of discrimination or decline to file a charge of discrimination but seek contact with an EEOC employee to decide whether to file a charge. *Id.* at 427. The form warns that failure to file a charge at that time could cause Fallon to lose her rights for untimely filing. *Id.* Fallon selected the option declining to file a charge at that time. *Id.*

TrailBlazer also submits an affidavit of Alma Anderson, an employee of the EEOC who was

---

[2] Although the receipt date is 20 days after the signature date, TrailBlazer concedes that the appropriate date of the charge is the earlier date listed by Fallon's signature. Doc. 36, Br. at 34.

in contact with Fallon regarding her case, and emails between the EEOC and Fallon as summary judgment evidence. Anderson states that Fallon provided information related to a potential charge on August 28, 2009 but chose to "not complete the charge filing process on that date." Doc. 38-16, App. at 1106 (Anderson Aff.). Anderson states that Fallon next submitted additional information to support her claim on September 17, 2009 and re-sent that same information by email on September 29, 2009. *Id.* On November 3, 2009, Fallon sent an email asking if the EEOC needed anything else from her and requested an update on the status of her case. *Id.* at 1109 (Email). On November 4, 2009, Anderson advised Fallon her case was assigned to Doris Brown. *Id.* at 1106 (Anderson Aff.), 1108 (Email). According to Anderson, Fallon then sent an email to Anderson and Brown on December 16, 2009 stating "I have the original claim filed, but I need some advice . . . Please help me or guide me in the right direction if you can." *Id.* at 1108 (Email). After Fallon sent the December 16th email, Anderson states that the "available records do not indicate any communication between EEOC and [Fallon]," *id.* at 1106 (Anderson Aff.), until over eight months later when Fallon sent an email to Anderson on September 1, 2010 stating that she had not heard from the EEOC for "a year." *Id.* at 1110 (Email). Anderson responded that Fallon's case was re-assigned to Tammy Johnson, because Brown had left the EEOC. *Id.* at 1106 (Anderson Aff.). Anderson states that the potential charge was then formalized. *Id.* Alma concludes that the EEOC dismissed the charge without any findings. *Id.* at 1107.

      The Court concludes that the summary judgment evidence submitted by TrailBlazer demonstrates that Fallon did not formally file and sign a charge with the EEOC until November 4, 2010. Fallon cannot successfully raise a dispute of fact by merely stating that she recalls filing a charge by phone sometime during the fall or early winter of 2009. Her affidavit provides no

information regarding the details of her conversation with the EEOC, *see Ramirez v. City of San Antonio*, 312 F.3d 178, 184-85 (5th Cir. 2002), *Stokes v. Dolgencorp, Inc.*, 367 F. App'x 545, 548-49 (5th Cir. 2010), and she admits that she never actually signed a formal charge until the following year. Fallon has failed to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587 (internal quotation marks and emphasis omitted). Her burden "is not satisfied with some metaphysical doubt as to material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted). The Court therefore determines that Fallon's formal EEOC charge was untimely.

In apparent anticipation that the Court would find Fallon's EEOC charge untimely, Fallon focuses her summary judgment Response on persuading the Court that it should apply equitable tolling to the timing of her EEOC charge. Doc. 41, Resp. at 21. Fallon contends that 1) she was not represented by counsel during the administrative process, 2) she initiated the EEOC complaint process early, and 3) she followed up with the EEOC several times about her case but, by the EEOC's own admission, the EEOC was the cause of the delay.[3] *Id.* at 21-22. As such, Fallon requests that the Court toll the limitations period and find her formal EEOC charge to be timely. *Id.*

---

[3]Fallon provides as summary judgment evidence a letter from the EEOC to TrailBlazer stating that, due to the fault of the EEOC and not any fault of Fallon, the EEOC failed to timely notify TrailBlazer of Fallon's complaint, doc. 42-8, App. at 245 (Letter), which TrailBlazer supplements with the Notice. Doc. 38-16, App. at 1102. Although Fallon submits the letter, she does *not* argue that the Notice constitutes a formal charge; that the Notice proves that Fallon filed a charge prior to November 4, 2010; or that the relation back of her signature should apply to the date of the Notice (which would fall outside of the limitations period). *See Edelman v. Lynchburg College*, 535 U.S. 106, 116 (2002). Instead, Fallon submits the letter only to support her argument that the EEOC was slow to respond to her requests for assistance. Similarly, Fallon does *not* argue that her intake questionnaire or emails to the EEOC sent in September, November, and December of 2009 constitute a formal charge. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008).

The limitations period for filing a formal EEOC charge can be extended through equitable tolling or estoppel. *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002); *Zipes v. TWA*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Taylor v. UPS, Inc.*, 554 F.3d 510, 521 (5th Cir.2008). However, these doctrines should be "applied sparingly." *Morgan*, 536 U.S. at 113; *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 880 (5th Cir. 2003). "The plaintiff has the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011). There are three bases upon which to apply equitable tolling: "1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." *Manning*, 332 F.3d at 880 (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)). Fallon alleges that the third basis applies to toll her limitations period because the EEOC failed to "properly handle their part in the process" by not responding to her December 16, 2009 email requesting guidance in the EEOC process. Doc. 41, Resp. at 21.

Fallon has not demonstrated that she is entitled to equitable tolling. She has presented no argument to persuasively explain why she was entitled to further guidance from the EEOC as to when a timely filing should be made or how such lack of guidance by the EEOC as to filing a charge constitutes "misleading" by the EEOC. *See Manning*, 332 F.3d at 880. Indeed, Fallon appears to have been aware that there was a short time frame for filing an EEOC charge, as her September 1, 2010 email explained: "I want to make sure I don't run out of time on this claim." Doc. 38-16, App. at 1110 (Email). The EEOC's failure to respond to her prior request for additional guidance cannot

constitute the required "affirmative misrepresentations" by the EEOC. *See Tillison v. Trinity Valley Elec. Coop., Inc.*, 204 F. App'x 346, 348 (5th Cir. 2006)(citing *Blumberg*, 848 F.2d at 644, and *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)); *Ramirez*, 312 F.3d at 184-85; *Granger*, 636 F.3d at 712. She has not demonstrated an entitlement to equitable tolling under the third prong of the test. *Manning*, 332 F.3d at 880.

The Fifth Circuit has held that a district court may apply equitable tolling even if none of the three bases applies, but only where the "plaintiff has actively pursued judicial remedies but filed a defective pleading, as long as the plaintiff has exercised due diligence." *Granger*, 636 F.3d at 712 (quoting *Perez v. United States*, 167 F.3d 913, 918 (5th Cir. 1999). Fallon was made aware in August 2009 that failure to timely file a formal charge would cause her to lose her rights. *See* Doc. 38-6, App. at 427 (Intake Questionnaire). Fallon declined to file a formal charge at that time. Although Fallon emailed the EEOC a few times in September and November 2009 with response and again on December 16, 2009 without response, Fallon waited until September 1, 2010 to communicate further with the EEOC. Her September 1st follow-up correspondence already fell outside of the 180-day and 300-day windows for filing a charge. Fallon did not sign the charge until November 4, 2012, also outside of the limitations period. *See Tillison*, 204 F. App'x at 348. The Court concludes that Fallon has not shown that she diligently pursued her claim from December 2009 to September 2010, during which time the limitations period passed.

Accordingly, the Court determines that Fallon's EEOC claim was untimely and that equitable tolling does not apply. Because Fallon failed to exhaust her administrative remedies in a timely manner, *see Dao*, 96 F.3d at 788-89, the Court **GRANTS** summary judgment to TrailBlazer on Fallon's claims under the ADA and TCHRA.

B.   *ADA Discrimination*

Even if the Court had found that Fallon's EEOC charge was timely, the Court would grant summary judgment to TrailBlazer on the merits of Fallon's ADA claim. A plaintiff who alleges discrimination on the basis of a disability can prevail under the ADA by showing that "1) he has a disability; 2) he is qualified for the position in which he seeks employment; and 3) he was discriminated against because of his disability." *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)). Employer discrimination includes situations where an employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *Griffin*, 661 F.3d at 222. However, an employer does not violate the ADA where it can "demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

TrailBlazer admits for purposes of summary judgment that Fallon has a disability under the first factor. Doc. 36, Br. at 35. TrailBlazer instead contends that the summary judgment record is devoid of evidence showing that it discriminated against Fallon because of her disability by failing to give her reasonable accommodations. *See Latimer*, 919 F.2d at 303; *Little*, 37 F.3d at 1075. Indeed, TrailBlazer argues that the summary judgment record demonstrates as a matter of law that Fallon was not an individual qualified for accommodations but that TrailBlazer gave her reasonable accommodations anyway and therefore did not discriminate against her. TrailBlazer submits as summary judgment evidence emails between Fallon and the staff at TrailBlazer and the deposition testimony of Long and Walker.

Regardless of whether Fallon was a qualified individual,[4] TrailBlazer offered her numerous suggestions for reasonable accommodations, most of which were rejected by Fallon. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010); Doc. 38-6, App. at 398 (Email). These included being moved to a different work team, being moved to a quieter building, and working evening and/or weekend hours, all to avoid interaction with others alleged to cause Fallon anxiety. Doc. 41, Resp. at 14. According to Long's deposition testimony, TrailBlazer accepted and effectuated Fallon's request to be moved to a quieter cubicle; her request for more break time (Long explained that she could take as many breaks as she needed so long as she got her work done); and her request to use a copier on a different floor of the office building (Fallon was told that she could use any copier at any time). Doc. 38-12, App. at 876-77 (Long Decl.). Long and Walker stated that Fallon also requested to work from home part-time (while maintaining a full-time schedule), but when TrailBlazer asked Fallon to be more specific with what days or time frames she needed to work from home, Fallon would not respond. Doc. 38-12, App. at 877-78 (Long Decl.); Doc. 38-10, App. at 698, 703 (Walker Dep.). TrailBlazer left open the possibility of working from home if Fallon could provide more specifics. Eventually, on August 17, 2009, TrailBlazer granted Fallon's request to work from home during certain hours every day even though Fallon never offered specifics on when or how long she would work from home. Doc. 38-6, App. at 397 (Email). As evidenced by an email between

---

[4]TrailBlazer argues that Fallon was not a qualified individual, because her disability prevented her from performing the essential functions of her job, such as attending work, completing assignments by their deadlines, and interacting with others. *See Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 759 (5th Cir. 1996) (holding that "an essential element of any … job is an ability to appear for work … and to complete assigned tasks within a reasonable period of time" (citing *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir.1994), and *Tyndall v. Nat'l Educ. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir.1994)); *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("It is a rather common-sense idea that if one is not able to be at work, one cannot be a qualified individual." (internal quotation marks and alterations omitted)).

Walker and Fallon, Walker explained to Fallon that she was permitted to work from home outside of the core hours of 9am-3pm, with a lunch break that could be taken at home sometime during the hours of 11am-1pm as well. *Id.* Fallon was required to maintain a full-time schedule of working 40 hours per week, but could thus work from home "ten or more hours per week, depending on the length of [her] lunch break." *Id.* Walker made clear that Fallon needed to return to work as soon as possible but no later than August 21, 2009. *Id.* Despite failing to work a single full day during the month of August and despite the fact that Fallon had not been to the office at all since August 7th, Fallon failed to return to the office on August 21st or any day thereafter. Doc. 38-4, App. at 357-58. She also failed to complete any work from home.

Fallon admits that TrailBlazer ultimately granted her primary requested accommodation of working at home part-time. Doc. 41, Resp. at 15, 25 n.109, 27. Instead, she argues that the accommodation came too late. *Id.* at 25 n.109, 27-28. The fact that the accommodation most sought by Fallon came later than the others does not satisfy Fallon's burden under the statute to show that TrailBlazer failed to offer reasonable accommodations. First, the Court is not convinced that TrailBlazer was even required to offer Fallon an accommodation of working from home, because some documents that Fallon needed to complete her job contained sensitive information that was not permitted to leave the confines of TrailBlazer's office and because the files–which were all in hard copy–needed to frequently change hands between TrailBlazer's employees.[5] *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726-27 (5th Cir. 1998). Second, Fallon never provided the specifics requested

---

[5]According to Walker, TrailBlazer considered using a courier service to shuttle documents between Fallon's home and TrailBlazer's office, but reasonably determined that a courier service would still cause delay in processing files. Doc. 38-10, App. at 704 (Walker Dep.).

by TrailBlazer as to what days and for what period of time Fallon would need to work from home to accommodate her disability. *See Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996). Because Fallon's needs were not obvious, Fallon should have participated to a greater degree in informing TrailBlazer of the specifics of her request to work from home part-time. *See Taylor*, 93 F.3d at 165.

In any event, the uncontroverted evidence in the summary judgment record shows that TrailBlazer actively and continuously attempted to communicate and brainstorm with Fallon in attempt to retain her as an employee, granted multiple accommodations over several months, granted the primary accommodation that was requested, and even encouraged Fallon to submit FMLA paperwork to protect her absences. Doc. 38-10, App. at 696-97, 701 (Walker Dep.). No reasonable jury could find that TrailBlazer failed to reasonably accommodate Fallon's disability. *See Griffin v. UPS*, 661 F.3d 216, 224 (5th Cir. 2011); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300-01 (5th Cir. 1999). TrailBlazer has adequately supported its contention with summary judgment evidence that its reasons for terminating Fallon were her excessive unexcused absences despite providing accommodations and her failure to complete her work. *See Scott v. JP Morgan Chase Bank*, 373 F. App'x 528, 529 (5th Cir. 2010). Accordingly, Fallon's ADA claim fails because the summary judgment record supports the conclusion that TrailBlazer's conduct did not constitute discrimination against Fallon because of her disability.

IV.

CONCLUSION

For the reasons stated above, Defendant TrailBlazer Health Enterprises LLC's Motion for Summary Judgment (doc. 35) is **GRANTED**.

SO ORDERED.

DATED October 15, 2012.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE